UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| CALVIN GOODRICH, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5:10-00418-HRW |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| HOWARD L. HUFFORD, *Warden*, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

***** ***** ***** *****

Calvin Goodrich, currently confined in the Federal Correctional Institution-Schuylkill ("FCI-Schuylkill") located in Minersville, Pennsylvania, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the manner in which the Federal Bureau of Prisons ("BOP") has calculated his federal sentence.[1]

The Court reviews the § 2241 petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing 28 U.S.C. § 2254 Cases; (applicable to § 2241 petitions under Rule 1(b)). *See*, *e.g.*, *Patton v. Fenton*,

---

[1]

As noted in the recent Order of March 13, 2012, [R. 6], Goodrich was confined in the Federal Medical Center located in Lexington, Kentucky, ("FMC-Lexington") when he filed this § 2241 proceeding, but his subsequent transfer to FCI-Schuylkill did not defeat this Court's jurisdiction over his § 2241 petition. *Id.*, at p. 1, n.1 (citing *White v. Lamanna*, 42 F. App'x. 670, 671 (6th Cir. 2002).

491 F.Supp. 156, 158-59 (M.D. Pa.1979); *see also* 28 U.S.C. § 2243. The Court may summarily dismiss a petition if it appears from its face that the petitioner is not entitled to relief. See 28 U.S.C. § 2243; *Blevins v. Lamanna*, 23 F. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970). For the reasons set forth below, the Court will deny the § 2241 petition and dismiss this proceeding.

## CLAIMS

Goodrich alleges that the BOP's refusal to apply certain pre-sentence credits, which he describes as "jail time credit," to his current federal sentence violates his right to due process of law guaranteed by the Fifth Amendment of the United States Constitution. While Goodrich's allegations in his § 2241 petition and administrative remedies are in many passages confusing and/or inconsistent, he appears to be seeking credit on his federal sentence for the time he served in the custody of Pennsylvania state officials during two different periods of time:

(1) the five months between June 15, 2002, and November 15, 2002, which Goodrich incorrectly identified as "6 months," [D. E. No. 2, pp. 2-3], and

(2) the twenty-two and one half months between April 29, 2003, and March 17, 2005, which Goodrich incorrectly identified as "twenty four months." [*Id.*].

2

## GOODRICH'S STATE AND FEDERAL CONVICTIONS AND ADMINISTRATIVE EXHAUSTION EFFORTS

The following is the sequence of relevant events constructed from the allegations in Goodrich's § 2241 petition, his statements in his BOP administrative remedies, and the BOP's responses to his administrative remedies at all levels.

### 1. The State Court Conviction

On June 15, 2002, police in Reading, Pennsylvania arrested Goodrich on state charges of possession with intent to deliver ("PWID") Cocaine and escape. On November 12, 2002, Pennsylvania state officials released Goodrich on state bond. On June 19, 2003, Goodrich was sentenced in the Berks County Court of Common Pleas for his criminal conduct stemming from his arrest on June 15, 2002, *i.e.*, PWID Cocaine and escape, and received not less than two years, but no more than five years on the PWID Cocaine count, and not less that 187 days but no more than two years on the escape charge, which was ordered to run concurrently with the PWID Cocaine count ("the State Sentence"). *See* D. E. No. 2-2, pp. 5 and 11.

### 2. Arrest on April 29, 2003

On April 29, 2003, while Goodrich was on release on bond from state custody, the Reading, Pennsylvania Police arrested him on new state drug charges and took him into state custody. Pennsylvania state officials *nolle prossed* criminal charges

3

against Goodrich in connection with the April 29, 2003, drug offenses because federal charges had been filed against him. *See* Goodrich Attachments to § 2241 Petition, *id.*, pp. 5 and 7.

### 3. The Federal Conviction

On August 5, 2003, federal authorities in Philadelphia, Pennsylvania filed drug charges against Goodrich in connection with his April 29, 2003, drug arrest, and on October 28, 2003, a superseding indictment was filed in that federal proceeding. *See United States v. Calvin Goodrich*, 2:03-CR-00498-JP (E.D. Pa.) [R. 2]. On November 19, 2003, Goodrich entered a not guilty plea, see *id.* [R. 103]. On February 18, 2004, a federal jury convicted Goodrich of three drug charges. *Id.*, [R. 238].[2] A year later, on March 10, 2005, Goodrich was sentenced to a term of 138 months of imprisonment on each of the three counts, to run concurrently with each other ("the Federal Sentence"). *Id.*, Docket Entry No. 370.

In the "Imprisonment" section of the "Judgment in a Criminal Case," entered on March 17, 2005, the sentencing judge stated:

---

[2]

The jury convicted Goodrich of one count of conspiracy to distribute in excess of 50 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 846; one count of possession of in excess of 5 grams of cocaine base with the intent to distribute and aiding and abetting, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2; and one count of possession of in excess of 5 grams of cocaine base with the intent to distribute within 1000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2. *See* Criminal Judgment, Attachment to § 2241 Petition, [D. E. No. 2-2, p. 1].

4

"**The defendant is to receive credit for any time served as a result of this conviction**."

*Id.*, R. 383; *see also* Attachment to § 2241 Petition, [D. E. No. 2-2, p. 2] (emphasis in original).

### 4. Goodrich's Administrative Exhaustion Efforts

On March 22, 2010, Goodrich submitted an administrative remedy request to the Warden,[3] seeking credit on his federal sentence *only* for the five-month time-period between June 15, 2002, and November 12, 2002. [D. E. No. 2-2, p. 7]. On April 28, 2010, Warden Schult denied that request. [*Id.*, p. 5]. She explained that because Pennsylvania state authorities had already credited the State Sentence with both (1) the five months Goodrich had served in state custody between June 15, 2002, and November 12, 2002, and (2) an unspecified time-period ". . . beginning from April 29, 2003," Goodrich could not also receive credit on his federal sentence for those same time-periods pursuant to 18 U.S.C. § 3585(b), which prohibits federal sentences from being credited with pre-sentence custodial time that has already been credited against another sentence. Schult did not identify the date on which Goodrich

---

[3]

The Warden is identified as Deborah G. Schult.  In 2010, Schult was the Warden of the Federal Correctional Institution-Ray Brook, located in Upstate New York, *see Lao v. Deborah Schult, Warden*, 9:09-cv-00653, No. 2010 WL 743757 (N.D.N.Y. February 25, 2010).  It therefore, appears that Goodrich pursued the BOP administrative remedy process, 28 C.F.R. §§ 542.10-.19, while confined in another BOP institution prior to being transferred to FMC-Lexington.

actually came into the BOP's custody, but she did state that Goodrich had been receiving credit on his sentence since March 10, 2005, the date on which the Federal Sentence was imposed. [*Id.*].

On May 3, 2010, Goodrich appealed to the BOP Regional Director, asserting new facts and asking that an additional time-period he spent in custody be credited to the Federal Sentence. [*Id.*, pp. 8-9]. Goodrich stated that he had received the BOP's Sentencing Monitoring Computation Data ("SMCD") sheet dated April 24, 2010; that according to that SMDC sheet, the BOP had erroneously deducted unspecified "jail credit" from the Federal Sentence; and that state authorities had not credited the State Sentence for any time he had served in state custody since June 19, 2003. [*Id.*].

Goodrich stated that since June 19, 2003, he had not been credited any time toward my state sentence. He added "As noted on the record for the disposition of state sentence noted in my PSR p. 16 recorded by Donald E. Miller, U. S. Probation Officer. . . . In addition, noted on the disposition on James P. Troutman, Clerk of Courts of Berks County. . . docket sheet." [*Id.*]. Goodrich further stated that the only time for which Pennsylvania state authorities had credited his state sentence were the two time-periods between (1) June 15, 2002, and November 12, 2002, and (2) May 15, 2003, and June 19, 2003. [*Id.*, p. 8].

Gooodrich did not, however, attach to his § 2241 petition the SMCD sheet showing that the BOP had deducted from jail credit which it had previously applied to the Federal Sentence; the portion of his federal Pre-Sentence Investigation Report ("PSIR") containing Mr. Miller's purported statements concerning credits to the State Sentence; or the docket sheet from the Berks County Court of Common Pleas allegedly containing James P. Troutman's statement that no credit had been applied to the State Sentence after June 19, 2003.

Goodrich made another statement about the time he had served in custody between June 20, 2003, (the date on which the State Sentence was imposed) and March 10, 2005, (the date on which the Federal Sentence was imposed), which is confusing and convoluted. [*Id.*, p. 8]. He concluded his appeal by requesting credit on the Federal Sentence for the twenty-two and one half month period of time between April 29, 2003, and March 10, 2005, **and** the six-week period of time he spent in state custody between April 29, 2003 and May 14, 2003. [*Id.*, p. 10].

On June 9, 2010, BOP Regional Director J. L. Norwood denied Goodrich's appeal for the same reasons Warden Schult had denied his initial remedy request: that 18 U.S.C. § 3585(b) prohibits the award of credit on a federal sentence for any time spent in custody which has previously been applied to another sentence. [*Id.*, p. 4]. The Regional Director agreed with Warden Schult that the Federal Sentence

7

commenced on March 10, 2005, the date it was imposed, but he made three other comments: (1) that the Federal Sentence had been computed to run concurrently with ". . . the sentence imposed in the Berks County Court of Common Pleas (3235 -02);" (2) that Goodrich had not been awarded prior custody credit on the Federal Sentence; and (3) that because the information concerning the Federal Sentence was ambiguous, Goodrich's request had been forwarded to the BOP's Designation and Sentence Computation Center for further review. [*Id.*].

Goodrich then filed his final administrative appeal. [*Id.*, p. 9]. On October 5, 2010, Harrell Watts, Administrator of the National Inmate Appeals (BOP Central Office), denied that appeal. [*Id.*, p. 6]. Watts based his denial on the following facts:

(1)    that on June 15, 2002, Goodrich had been in the custody of the Commonwealth of Pennsylvania;

(2)    that Goodrich remained in that state's custody ". . . following your erroneous release from their sentence on October 30, 2003, through November 19, 2003, when the U. S. Marshal Service (USMS) assumed physical custody of you;"

(3)    that after updating its computations, the BOP had applied prior custody credit to the Federal Sentence from the date that the Commonwealth of Pennsylvania deemed its sentence satisfied through the day before the Federal Sentence was

8

imposed on March 10, 2005;[4] and

(4)      that the remaining time Goodrich sought to be credited to the Federal

Sentence (presumably, the five months between June 15, 2002, and November 12,

2002 **and** the twenty-two and one half months between June 19, 2003 and March 10,

2005), had been applied to the State Sentence and therefore the BOP could not credit

the Federal Sentence with those two time-periods pursuant to the prohibition against

double credits set forth in 18 U.S.C. § 3585(b).   [*Id.*].

## DISCUSSION

Warden Schult, BOP Regional Director J.L. Norwood, and National Inmate

Appeals Administrator Harrell Watts properly concluded that pursuant to 18 U.S.C.

§ 3585(b), Goodrich is not entitled to prior custody credits, or "jail credit" (as

Goodrich identifies the term), for the periods of time between: (1) June 15, 2002 and

November 12, 2002, and (2) April 29, 2003 and March 10, 2005.

Under subsection (b) of Section 3585, the Attorney General, through the BOP,

is granted the authority to grant a prisoner credit for pre-sentence detention. *Id.*;

---

[4]

Watts did not specify either the precise amount of prior custody credits the BOP applied to
the Federal Sentence after reviewing his file, or the date on which the Commonwealth of
Pennsylvania deemed the State Sentence satisfied. As noted, the portion of the Goodrich's PSIR
which he attached to his § 2241 petition states that as to the State Sentence, Goodrich received not
less than two years, nor more than five years, on the PWID Cocaine conviction. [D. E. No. 2-2, p.
11]. That document further states that the "Maximum Expiration Date" for the State Sentence was
December 15, 2007.

*United States v. Wilson*, 503 U.S. 329, 333-35 (1992); *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 1818 (1993). However, in the last line of the statute, Congress has specified that the credits are limited to time "that has not been credited against another sentence." § 3585(b). Awarding a prisoner with double credit for time credited toward another sentence is specifically prohibited by 18 U.S.C. § 3585(b).[5]

As Schult, Norwood, and Watts correctly concluded, the five-month period during which Goodrich was in custody between June 15, 2002, and November 12,

---

[5]

The controlling statute provides as follows, in its entirety:

18 U.S.C. § 3585. Calculation of a term of imprisonment

(a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

**that has not been credited against another sentence**.

28 U.S.C. § 3585 (emphasis added).

10

2002, was properly credited to the State Sentence, not the Federal Sentence. The BOP would have had no basis for applying that five months' time to the Federal Sentence, because Goodrich served that time pursuant to the unrelated State Sentence because of his criminal activity on *June 15, 2002*. By contrast, it was Goodrich's subsequent criminal activity on *April 29, 2003*, which precipitated the federal prosecution and resulted in the Federal Sentence months later.

The BOP officials also correctly determined that Goodrich was not entitled to prior custody credits for the twenty-two and one half month period between April 29, 2003, and March 10, 2005. Goodrich was arrested on April 29, 2003, on the new drug charges, and although state officials did not pursue new criminal charges against him based on that drug arrest, he remained in state custody after that date pursuant to the prior criminal charges that had been filed against him on June 15, 2002, in the Berks County Court of Common Pleas on June 15, 2002. As the excerpt from Goodrich's PSIR reflects, the State Sentence was imposed on June 19, 2003, and as a result, Goodrich faced a state prison term of not less than two years (from June 19, 2003) and not more than five years (from June 19, 2003).[6]

---

[6]

Arguably, the earliest date on which Goodrich could have satisfied the State Sentence was June 19, *2005*, and latest date on which he could have satisfied the State Sentence was on June 19, *2008*. The PSIR excerpt also stated that the "maximum expiration date" of the State Sentence was December 15, 2007, which accounts for the five-months between June 15, 2002, and November 12, 2002, being credited to the State Sentence.

11

When the Commonwealth of Pennsylvania arrested Goodrich on April 29, 2003, it obtained "primary jurisdiction" over him. *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922). That primary jurisdiction afforded Pennsylvania the unqualified right to sentence Goodrich first, which it did on June 19, 2003, and require Goodrich to serve the State Sentence first, *id*. at 260–61, a right it retained even though the federal government later charged him with drug offenses related to the April 29, 2003, arrest, ordered him to appear in federal court pursuant to a writ of habeas corpus *ad prosequendum*, and sentenced him. *See United States v. Evans*, 159 F.3d 908, 912 (4th Cir.1998); *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005).

Goodrich alleged in both his § 2241 petition and in his administrative appeals that the Commonwealth of Pennsylvania applied no credit to the State Sentence for any time after June 19, 2003, and that all of the time he had served in custody between June 19, 2003, and March 10, 2005, should be applied to the Federal Sentence, but he offered no evidence that Pennsylvania state authorities relinquished primary jurisdiction over him either on April 29, 2003 (the date on which he was arrested for new drug charges) or on June 19, 2003 (the date on which the State Sentence was imposed). Absent such documentation, Goodrich could not begin serving the Federal Sentence until the State Sentence was deemed satisfied by Pennsylvania officials. *See United States v. Custard*, 230 F.3d 1360, 2000 WL

12

1290338, at *2 (6th Cir. September 5, 2000) (holding that a prisoner can not begin serving a federal sentence until he completes service of his state sentence and enters federal custody).   Further, by determining that Goodrich began serving the Federal Sentence on March 10, 2005, the date it was imposed, instead of the date on which he came into actual federal custody, the BOP has made a sentencing-credit decision which is favorable to Goodrich.   Typically, a federal prisoner begins serving his sentence when he arrives in the BOP's actual custody. *See* 18 U.S.C. § 3585(a), ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.").

Thus, even though Goodrich may not have been in the BOP's actual, physical custody on March 10, 2005, in the manner defined by 18 U.S.C. § 3585(a), the BOP has retroactively effectuated a *nunc pro tunc* designation of the state facility where Goodrich was serving the State Sentence as the place where he began serving the Federal Sentence as of March 10, 2005, pursuant to 8 U.S.C. § 3621(b) and *Barden v. Keohane*, 921 F.2d 476 (3d Cir.1991). [7]

---

[7]
    In *Barden*, the Third Circuit held that the BOP's authority under 18 U.S.C. § 3621(b) to designate the penal institution where a federal prisoner will serve his federal sentence includes the authority to retroactively designate, *nunc pro tunc* (or "after the fact"), the state prison a defendant has served his state sentence as the place where he served his federal sentence. *Barden*, 921 F.2d at 480. The practical effect of such a designation is to grant the federal prisoner credit against his

Finally, without employing the precise legal terms, Goodrich appears to be seeking a construed retroactive *Barden* designation (of the state facility where he served the State Sentence as the place where he served the Federal Sentence) for an additional period of time, between June 19, 2003 (the date on which the State Sentence was imposed) and March 10, 2005 (the date on which the Federal Sentence was imposed). Such a designation could occur only if the BOP determined that the Federal Sentence runs *fully* concurrently with the State Sentence. If so, the BOP could retroactively designate the state prison where Goodrich served the State Sentence as the facility where he served the Federal Sentence, not just as far back as March 10, 2005, but further back, to June 19, 2003, the date on which the State Sentence was imposed. *See Barden*, 921 F.2d at 478, 481–83.

This construed claim fails for two reasons. The district court did not specify that the Federal Sentence was to run concurrently with the State Sentence when it had an opportunity to do so. If a federal judgment and commitment order is silent as to whether the sentence runs concurrently with or consecutively to a previously imposed state sentence, and state authorities have primary jurisdiction over the defendant, the presumption is that the federal sentence will run consecutively to the state sentence

---

federal sentence for all of the time spent in state custody, in effect serving the two sentences concurrently. The BOP has accepted the *Barden* rule and set forth the factors to be considered in determining whether to make such a designation in Program Statement 5160.05.

regardless of which sentence was imposed first. *Jones v. Eichenlaub*, No. 08-CV-13624, 2010 WL 2670920, at *3 (E.D. Mich. July 1, 2010). That presumption is based on § 3584(a), "which generally requires consecutive service of sentences imposed at different times unless the court specifies concurrent service." *Id.*

Second, there is no reason why the Federal Sentence would have been ordered to run concurrently with the State Sentence. As Goodrich and the BOP officials have all noted, Pennsylvania state officials *nolle prossed* criminal charges against Goodrich in connection with the April 29, 2003, drug offenses because federal charges had been filed against him. The State Sentence was imposed *solely* in connection with the prior June 15, 2002, PWID Cocaine and escape offenses which Goodrich committed on June 15, 2002, *not* the subsequent April 29, 2003, drug activity which resulted in federal charges and later, the Federal Sentence.

Given those facts, there would be no reason why the district court would have intended or ordered the Federal Sentence to run concurrently with the State Sentence which pertained to criminal offenses Goodrich had committed on June 15, 2002, almost a year before his April 29, 2003, drug activity.[8] The Federal Sentence states

---

[8]

Goodrich correctly notes that in the excerpt from his PSIR, the U. S. Probation Office stated that it did not assess any Criminal History points for the State Sentence ". . . since it has been taken into consideration as conduct that is part of the instant offense pursuant to provisions of §1B1.3 (relevant Conduct)." [D. E. No. 2-2, p. 11]. However, that same PSIR excerpt makes it clear that the State Sentence was based exclusively on Goodrich's criminal activity on June 15, 2002, not his

15

only that Goodrich was to receive credit for any time served as a result of "this sentence," *see* D. E. No. 2-2, p. 11, and as explained, "this sentence" involved Goodrich's criminal activity on April 29, 2003, not time which he spent in state custody as a result of his earlier June 15, 2002, criminal offenses.[9]  Therefore, the BOP had no reason to credit the Federal Sentence for time which Goodrich spent in state custody between June 19, 2003, and March 10, 2005, serving the State Sentence which was completely unrelated to the Federal Sentence.

The BOP has done all that it was required to do by: (1) determining that Goodrich began serving the Federal Sentence on March 10, 2005, the date it was imposed, and (2) applying prior custody credits to the Federal Sentence for the time between Goodrich's satisfaction of the State Sentence and March 10, 2005.

## SUMMARY

Because the BOP properly concluded that Goodrich was not entitled to "jail credit" and/or prior custody credits under 18 U.S.C. § 3585(b) for the time he spent in state custody between: (1) June 15, 2002 and November 12, 2002, and (2) April 29, 2003, and March 10, 2005, Goodrich's § 2241 petition will be denied and this

---

subsequent criminal activity on April 29, 2003, which resulted in the Federal Sentence.

[9]

Goodrich could have filed a timely motion under 28 U.S.C. § 2255 asking the district court to amend the Federal Sentence to reflect that it ran concurrently with the State Sentence, but for the reasons outlined above, such a motion would have likely been denied.

proceeding will be dismissed.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     Petitioner Calvin Goodrich's 28 U.S.C. § 2241 petition for writ of habeas corpus, [D. E. No. 2], is **DENIED**;

(2)     This action is **DISMISSED** from the active docket; and

(3)     Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent and Goodrich's current custodian, Howard L. Hufford, Warden of FCI-Schuylkill, in Minersville, Pennsylvania.

This 8th day of May, 2012.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge